OMEGA CONSTRUCTION COMPANY, INC v ALTMAN

Docket No. 82564. Submitted October 8, 1985, at Lansing.—Decided December 16, 1985. Leave to appeal applied for.

Omega Construction Company, Inc., brought an action in Ingham Circuit Court against Joel L. Altman, Altman Development Company, Lakepointe of Jacaranda, Ltd., and The Arbor Club at Boca Raton, Ltd. The first count of the complaint sought a declaratory judgment as to whether the construction contracts between plaintiff and defendants were subject to arbitration. Both of the construction contracts at issue contained a provision which incorporated the architect's specifications and plans into the contracts between the parties. The project manuals which were prepared by the architect and contained the specifications and plans for the respective projects also each contained a provision incorporating the general contract conditions found in a specified document published by the American Institute of Architects. Among the general contract conditions in that document was an arbitration provision. Defendants moved for summary judgment as to the first count, asserting that there was no genuine issue of fact and that they were entitled to judgment as a matter of law. The trial court granted the motion for summary judgment as to the first count, holding that defendants had not waived their constitutional right to judicial process and a trial. The parties voluntarily dismissed the other counts, and the court entered a final judgment on the first count. Plaintiff appealed. *Held:*

1. While Michigan public policy favors arbitration of disputes and arbitration clauses will be liberally construed, arbitration is a matter of contract and a party cannot be required to arbitrate where there has been no agreement to arbitrate.

2. Since plaintiff failed to establish that references in the contracts with defendants to the project manuals prepared by the architect were for other than the limited purpose of incor-

REFERENCES

Am Jur 2d, Arbitration and Award §§ 9, 11-53, 61.

Am Jur 2d, Summary Judgment §§ 13, 15.

See the annotations in the ALR3d/4th Quick Index under Arbitration and Award; Contracts; Summary Judgment.

porating the architect's plans and specifications for the respective projects, and there was no indication that the parties intended to incorporate in the contract any of the provisions contained in the project manuals other than the plans and specifications of the projects, the parties cannot be said to have incorporated the arbitration agreement into the contracts at issue.

3. While the trial court reached the right result, summary judgment in defendants' favor was proper because there had been no intent to incorporate the arbitration provision into the contracts at issue rather than for the stated reason of the trial court that there had been no waiver of the constitutional right to judicial process and trial.

Affirmed.

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM.

A court in considering a motion for summary judgment on the ground that there is no genuine issue as to any material fact must ascertain, after review of the pleadings and any depositions, affidavits, admissions and documentary evidence, whether there is a dispute as to any material fact; the court should give the benefit of any reasonable doubt to the nonmoving party, being liberal in finding a question as to a material fact; summary judgment should be granted only where no factual development is possible which would support the nonmoving party's claim (GCR 1963, 117.2[3]).

2. CONTRACTS — ARBITRATION — DISPUTES — LIBERAL CONSTRUCTION.

Public policy favors arbitration in the resolution of disputes; arbitration clauses contained in contracts are to be liberally construed and any doubts about the arbitrability of an issue must be resolved in favor of arbitration.

3. CONTRACTS — ARBITRATION — AGREEMENT TO ARBITRATE.

A party to a contract cannot be required to submit a dispute concerning the contract to arbitration rather than seeking judicial resolution of the dispute unless he has agreed to submit such dispute to arbitration.

4. CONTRACTS — ARBITRATION — AGREEMENT TO ARBITRATE — INCORPORATION BY REFERENCE.

An arbitration provision contained in a project manual prepared by an architect and containing the architect's plans and specifications for a construction project will not be incorporated into a contract between the contractor and the developer of the project where the contractor and developer refer to the project

manual for the purpose of incorporating into their contract the architect's plans and specifications and where there is no evidence of an intent that the parties intended to also incorporate into their contract the arbitration clause contained in the project manual.

*Tolley, Fisher & Verwys, P.C.* (by *Mark H. Verwys* and *Paul L. Nelson*), for plaintiff.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *Jack C. Davis, Jeffrey W. Bracken* and *Terry A. Dake*), for defendants.

Before: J. H. GILLIS, P.J., and CYNAR and R. L. EVANS,* JJ.

CYNAR, J. On October 2, 1984, the plaintiff, Omega Construction Company, Inc., filed a complaint in Ingham County Circuit Court. The first count of the complaint sought a declaratory judgment, finding that disputes arising out of the construction contracts with defendants were subject to arbitration. The second and third counts sought, as an alternative to the first count, damages for breach of contract and contract-related torts. On November 9, 1984, the defendants filed a motion for summary judgment pursuant to GCR 1963, 117.2(3) [now MCR 2.116(C)(10)]. On January 10, 1985, Ingham County Circuit Court Judge Thomas L. Brown granted the defendants' motion for summary judgment on Count I, holding that the defendants had not waived in the contract documents their right to judicial process and trial and the parties are stayed from arbitration in Michigan. The parties voluntarily dismissed the other two counts; and on January 23, 1985, Judge Brown filed his final order. The plaintiff now appeals as of right.

* Recorder's court judge, sitting on the Court of Appeals by assignment.

The only issue raised on appeal is whether the trial court properly granted summary judgment to the defendants on Count I of the complaint. The trial court granted defendants summary judgment based on GCR 1963, 117.2(3), finding that there was no material issue of fact and that defendants were therefore entitled to summary judgment as a matter of law.

The standard for granting motions for summary judgment brought under subrule 117.2(3) is well settled. In determining whether such motions should be granted, reference must be made to any evidence in the case, including depositions, affidavits, admissions and pleadings. Once these documents are reviewed, the court must ascertain whether there is a dispute as to any material fact. *Anderson v Kemper Ins Co,* 128 Mich App 249; 340 NW2d 87 (1983). The court should give the benefit of any reasonable doubt to the nonmoving party, being liberal in finding a question as to a material fact. *Rizzo v Kretschemer,* 389 Mich 363; 207 NW2d 316 (1973). The Court must be satisfied that no factual development is possible which would support the nonmoving party's claim. *Royal Globe Ins Co v Great American Ins Corp,* 118 Mich App 735; 325 NW2d 556 (1982).

The relevant evidence in this case consists primarily of the contract documents.

On November 29, 1983, Omega entered into a contract with defendants, Joel Altman, as president of Altman Development Company, and the Arbor Club. The contract stated that it was "being signed based on plans and drawings prepared by the architect". The contract further stated:

"Seciton *[sic]* 1.03. *Master Drawings and Specifications* A master set of the aforesaid Drawings and Specifications, initialled by the parties hereto and by the

Development's Architect, and the contractor's Surety or Guarantor will be placed on file with the Architect, and such master set hereof shall govern in all matters which arise with respect to such Drawings and Specifications."

Similarly, the construction contract between Omega and Altman, on behalf of defendant Lakepointe, provided that it was "being signed based on preliminary plans and drawings prepared by the Architect". The contract between Omega and Lakepointe further stated:

"Section 1.01, *Contract Documents.* * * * At such time as the final working drawings and specifications are arrived at, they shall be considered part of the Contract Documents for purposes of this Agreement, and shall be initialled by all the parties to this agreement, and the Architect, at the closing of the Mortgage being entered into to finance the construction of the above-referenced Development.

* * *

"Section 1.03. *Master Drawings and Specifications.* A master set of the aforesaid Drawings and Specifications, initialled by the parties hereto and by the Development's Architect, and the Contractor's Surety or Guarantor will be placed on file with the Architect, and such master set, as amended from time to time pursuant to Section 1.05 hereof shall govern in all matters which arise with respect to such Drawings and Specifications."

On appeal, the defendants admit that these provisions incorporate the architect's specifications and plans into the parties' contracts.

The architect's specifications and plans were contained in the "Project Manual" which was drafted by the architect, rather than by any of the parties to this appeal.

The title page of the project manual was signed by the parties. The parties agree that the project manual, § 00700, states:

"August 1976 Thirteenth Edition of 'General Conditions of Contract for Construction' A.I.A. Document A201, as published by American Institute of Architects, is hereby made a part of these specifications."

Article 7, Miscellaneous Provisions, of AIA Document A201 provided for arbitration of disputes:

"7.9.1 All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, except as provided in Subparagraph 2.2.11 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.9.4 and 9.9.5, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise."

Defendant Joel Altman stated by affidavit that it was never the intent of Lakepointe or the Arbor Club to have disputes under the contract arbitrated. Harold DeYoung, the president of the plaintiff corporation, stated by affidavit that it was his understanding that the documents incorporated AIA document A201. The defendants' brief asserts that the architect stated by affidavit that reference to AIA general conditions (document A201) was not for the purpose of incorporating the arbitration clause. However, the only affidavit contained in the trial record signed by the architect does not support defendants' assertion.

Plaintiff contends that the arbitration clause set forth above was incorporated by reference into the parties' contract when the parties signed the cover sheet of the project manual. Defendants claim that an arbitration agreement cannot be incorporated by reference unless there is clear and unambigu-

ous language contained in the contract stating that this is the intent of the parties. Neither the project manual nor the contracts state that the arbitration clause was to be incorporated into the contracts.

Michigan's public policy favors arbitration in the resolution of disputes. Arbitration clauses in contracts are to be liberally construed. Any doubts about the arbitrability of an issue should be resolved in favor of arbitration. *Campbell v Community Service Ins Co,* 73 Mich App 416, 419; 251 NW2d 297 (1977).

It is well settled that arbitration is a matter of contract. A party cannot be required to arbitrate an issue which he has not agreed to submit to arbitration. *Kaleva-Norman-Dickson School Dist v Kaleva-Norman-Dickson School Teachers' Ass'n,* 393 Mich 583, 587; 227 NW2d 500 (1975); *Grand Rapids v Grand Rapids Lodge No 97, Fraternal Order of Police,* 415 Mich 628, 635; 330 NW2d 52 (1982).

In the present case the disputed arbitration clause was not contained in the contract, but in a separate document, the project manual.

Our Supreme Court, in *Arrow Sheet Metal Works, Inc v Bryant & Detwiler Co,* 338 Mich 68, 78; 61 NW2d 125 (1953), was confronted with a subcontract entered into between the defendant general contractor and plaintiff subcontractor which provided that the work was to be done according to the plans and specifications of the architects and engineers. The plans and specifications were incorporated into the general contract between Ford Motor Company and defendant general contractor and indicated in detail the manner in which the construction work was to be performed. A dispute arose between the defendant general contractor and the plaintiff subcontractor

concerning whether the "time is of the essence" clause contained in the general contract was incorporated by reference into the subcontract. After determining the reason why the parties referred to the drawings and specifications in the subcontract, the Court concluded that the "time is of the essence" provision was not incorporated into the subcontract. The Court held that "in the case of subcontracts, as in other cases of express agreements in writing, a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purposes specified". 338 Mich 78.

Applying the holding of *Arrow* to the facts presented, we find that the parties referred to the architect's drawings and specifications for a limited purpose. The parties did not agree to incorporate the architect's dispute resolution procedures, nor any other matters contained in the project manual except the architect's drawings and specifications. Defendants were therefore entitled to summary judgment on Count I.

When the trial court granted summary judgment on Count I, thereby denying arbitration, it did not issue an opinion explaining the reasons for its decision. The trial court, however, did orally indicate that arbitration in Michigan was to be stayed because defendants had not waived in the contract documents their right to judicial process and trial.

The defendants were entitled to summary judgment as a matter of law on the ground that the parties' contracts did not incorporate the arbitration clause in the project manual. We reject the reasoning used by the trial court in support of its granting summary judgment. The trial court's reasoning in support of its ruling was incorrect because the trial court had to assume that the

arbitration clause in the project manual was also incorporated by reference before reaching the question whether there was a waiver of a constitutional right of judicial process and trial.

Affirmed on the basis of reasons stated herein.